[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION FOR JUDGMENT (#102)
Plaintiff has appealed to the Superior Court from the decision of the Employment Security Board of Review dated May 6, 1997. Defendant Administrator filed this motion for judgment on September 18, 1997 (dated 9/12/97). The Board has certified the administrative record, which the court has reviewed in its entirety.
Plaintiff was employed by Grove Hill Medical Center, P.C., New Britain. She last reported for work on July 18, 1996, filing for unemployment benefits on or about July 20, 1996. Plaintiff's application for benefits was denied by the Administrator on July 30, 1996, and she filed a timely appeal. The Appeals Referee conducted a de novo hearing on September 3, 1996. By decision (with findings of fact) dated September 13, 1996, the Referee affirmed the decision of the Administrator. Plaintiff appealed to the Board of Review which adopted the Referee's findings as its CT Page 3702 own and affirmed the denial of benefits. The decision of the Board was mailed to all interested parties on May 6, 1997, and plaintiff appealed to the Superior Court.
The findings disclose that plaintiff worked as a phlebotomist for the defendant Grove Hill Medical Center at its Plainville facility; plaintiff resided in Bristol and her commute time to her place of employment was approximately fifteen minutes. The posted hours of work at the Plainville office were from 8:00 a.m. to 5:00 p. m. On July 17, 1996, a patient arrived at 5:05 p. m. to have blood work performed. According to the Referee, plaintiff was unaware that the patient had been waiting some time, advised that she closed at 5:00 p. m., and told the patient that she would have to come back the following day.[1] Plaintiff had been assigned paperwork to be completed by 5:30 p. m. as a result of the absence of the secretary who normally performed such function; because of the paperwork, plaintiff was behind in her blood work. Nevertheless, when the patient protested, plaintiff, with the assistance of a co-worker (nurse), drew blood for diagnostic purposes. It took three attempts before plaintiff and the co-worker were able to draw the blood because, according to plaintiff, the patient "had extremely difficult veins".[2] The patient complained to her physician concerning the manner in which she was treated, and the physician, in a written communication dated "7/17/96 6:00 p. m.", indicated he was "furious" over the incident, that the patient could not have conveniently returned on a subsequent day because of the distance between her home and the facility, that the patient had been treated rudely, and that because of what had occurred, he would "fire" plaintiff "in a second." The physician demanded a "complete follow-up on this."
On July 18, 1996, plaintiff had a discussion with her supervisor, Ms. Herrick, which lasted approximately twenty-five minutes. Plaintiff was advised of the physician's complaint, but apparently was not shown the letter. During the discussion, Ms. Herrick informed plaintiff that July 18 would be her last day working at the Plainville office and, thereafter, she would work out of the Grove Hill facility located on Kensington Avenue in New Britain. The Referee found that when plaintiff was so informed, she stated to Ms. Herrick that she did not wish to work at the Kensington Avenue facility, was concerned about an increase in the length of her commute, and stated that there were other problems. Plaintiff left the employer's premises on July 18, before the end of her scheduled shift. The Referee (as did CT Page 3703 the Administrator and the Board) identified the issue as that of voluntarily leaving suitable work without good cause attributable to the employer. General Statutes Section 31-236 (a)(2)(A).
The Referee found that plaintiff "had been hired to work at the employer's Plainville facility with the understanding that she would work on a rotating basis at the facility located at 300 Kensington Avenue in New Britain." Also, that it would take plaintiff "approximately twenty minutes" from her home in Bristol "to commute [to] the office located [in] New Britain on Kensington Avenue." Further, that plaintiff "did not wish to work at the Kensington Avenue facility because having worked there for about three weeks, on part-time basis to be trained, she had formed the opinion that the office where she worked was too small for her to be comfortable"; also, that the plaintiff "suffers from claustrophobia although she did not specifically bring this to the attention of the employer at the time she quit." Additionally, the Referee found that "[d]uring the time claimant was trained in the Kensington Avenue office she never complained about her physical environment."
The Board concluded that the Referee's findings were supported by the record, it adopted the Referee's findings of fact as its own, and it affirmed the Referee's decision dismissing the appeal from the Administrator's denial of benefits.[3]
It is well established that in considering appeals of this nature the role of the Superior Court is quite limited. It is not
the function of the court to adjudicate questions of fact and the reviewing court may not substitute its own judgment and conclusions for those of the Appeals Referee or the Board.Guevara v. Administrator, 172 Conn. 492, 495-96 (1977). The Superior Court does not conduct a trial do novo and "is bound by the findings of subordinate facts and reasonable factual conclusions made by the appeals referee where, as here, the Board of Review adopted the findings and affirmed the decision of the referee." Burnham v. Administrator, 184 Conn. 317, 321-22 (1981). The court's function is to ascertain, upon a full review of the certified record, whether the agency's action was illogical, unreasonable, arbitrary, illegal, or an abuse of its discretion.Robinson v. Unemployment Security Board of Review, 181 Conn. 1,4-5 (1980). "Conclusions of law reached [administratively] must stand if they resulted from a correct application of the law to the facts found and could reasonably and logically follow from CT Page 3704 such facts." Id.
With reference to separations from employment occurring after October 1, 1995, General Statutes Section 31-236 (a)(2)(A) provides that an individual shall be ineligible for benefits if he leaves suitable employment voluntarily without good cause attributable to his employer; good cause, includes leaving as a result of changes in conditions of employment created by the employer. The court has reviewed carefully the certified record and has heard oral arguments on the instant motion. Plaintiff has contended that the agency misconstrued, and did not properly address, the central issue(s) raised by her appeals to the Referee and the Board.[4] After examining the statutory language and the applicable regulations, it is this court's view that the administrative analysis was germane, and consonant with the applicable principles of law.
Section 31-236 (a)(2)(A) deals with leaving "suitable work voluntarily . . . without good cause attributable to the employer." Under 10 Reg. Conn. Agencies, D.O.L., Section 31-236-22(a)(1) (A), good cause requires a finding that, upon commencement of employment, the individual's employer changed a working condition agreed upon at the time of hire; (1)(B) requires that during the course of employment, the individual's employer substantially changed a working condition established in the employment agreement and such change had a significantly adverse effect upon the individual. Subsection (1)(C) of the Regulation provides that such good cause is present where working conditions have threatened the employee's health either by causing illness or by contributing to the aggravation or worsening of the individual's medical condition.[5]
Section 31-236-22(a)(1)(I) states that cause exists where it is established that the employee was subjected to continual physical or verbal abuse, or unfair treatment by his supervisor or any other authorized representative of the employer. Subsection (a)(2) states that good cause requires that the employee express his dissatisfaction to the employer regarding the particular working condition, and seek a remedy, unsuccessfully, through those means reasonably available to him before leaving the employment.
The decision of the Appeals Referee indicates appearances by plaintiff, her supervisor (Ms. Herrick), and another representative of the employer.[6] From the entire record, it is evident that the opposing contentions of the parties were fully documented through agency filings, were directly before the administrative tribunal(s), and were considered and weighed by both the Referee and the Board in reaching their determinations. Resolution of factual issues (as well as any credibility CT Page 3705 assessments) was the proper province of the Referee; as stated, this court does not conduct proceedings do novo, and its appellate review of the administrative action taken is statutorily circumscribed in terms of permissible scope.
The Referee, after a hearing, found that the transferring of plaintiff to another office location did not constitute, in the circumstance of this case, unreasonable disciplinary action.[7]
The Referee stated: "the claimant was being disciplined in an effort by her immediate supervisor to get her away from the physician who was displeased with what had occurred . . ." It was noted that a transfer of an employee to a new work location generally would not constitute sufficient cause for leaving employment, as a change in conditions, unless it involved a substantial increase in the commuting distance; here, the Referee found the increased commute time was approximately five minutes and, therefore, not substantial. With reference to "suitable employment," the Referee stated: "[s]ince the claimant had been advised at the time of hire that she would work at the employer's offices on a rotating basis, and since she had been trained at the Kensington Avenue office, and further since the actual change in her commuting time was minimal, it is [difficult] to conclude that the change in her work station rendered the job unsuitable." It was also found that plaintiff never informed the employer of a claustrophobic condition.
Both the Referee and the Board concluded that plaintiff failed to undertake to preserve the employment, through discussion of reasonable alternatives, prior to quitting; Section31-236-22 (a)(2); the Referee stated that "the claimant's act of walking off the job at midday without seeking to have a higher authority review her supervisor's decision demonstrates that she failed to take reasonable steps necessary to preserve her employment status before quitting."
Although plaintiff disputes the aforesaid findings, and questions their relevance, the Board found the aforesaid findings to be supported by the record in the court's view, the administrative findings are all material to whether, under the applicable statute (General Statute Section 31-236 (a)(2)(A)), plaintiff voluntarily left suitable employment without good cause attributable to the employer.
The agency decision is supported by the administrative record returned to court; on the basis of the record as certified, I am CT Page 3706 unable to conclude that the agency action was arbitrary, unreasonable, illogical, illegal, or in abuse of its administrative discretion. The motion for judgment (#102) dismissing the appeal is hereby Granted.
Mulcahy, J.